**HUNTER–HAYES ELEVATOR COMPANY,**
**Appellant,**

v.

**Genevie WILLIAMS et al., Appellees.**

**No. 16716.**

Court of Civil Appeals of Texas.

Fort Worth.

April 22, 1966.

Rehearing Denied May 6, 1966.

Cantey, Hanger, Gooch, Cravens & Scarborough, and Howard Barker and Sloan B. Blair, Fort Worth, for appellant.

T. W. Roper, Rumph, Ivy & Karpenko, and Evans J. Karpenko, Fort Worth, for appellees.

MASSEY, Chief Justice.

At material times plaintiff Genevie Williams was an employee of Meacham's. Meacham's Workmen's Compensation Insurer was Liberty Universal Insurance Company. In Meacham's store building maintenance of the elevators, including the freight elevator, was attended by defendant Hunter-Hayes Elevator Company, under an independent contract with Meacham's.

On February 1, 1962 plaintiff, acting within the scope and course of her employment, was riding and operating the freight elevator. She intended to stop at the top floor of the building—and to accomplish such objective she operated the elevator control handle which was a part of the control apparatus designed to shut off the lifting force and apply a breaking force so as to bring the elevator to a halt. Although under normal conditions plaintiff's actions would have brought the elevator to a stop with the floor thereof even with the floor on which she intended to leave the elevator, such was not the case on this occasion. The "brakes failed". At least they failed to hold securely, allowing the elevator to "slide" on past the top floor. Such failure allowed the top of the elevator to "bump" against what might be termed the "bumper" at the top of the elevator shaft. In turn this set up a vibration. The agitation of the elevator resulted in the jarring loose of the "escape hatch cover" in or on the elevator and this fell to the interior of the elevator and onto plaintiff—resulting in her injuries. The "escape hatch cover" was not fastened or bolted, but fitted into a groove so that its weight and the force of gravity held it in place. It was not the practice to fasten or bolt it before the accident, though such practice was subsequently initiated. Oftentimes it was necessary to the transportation of freight that the cover be removed so that long articles (such as carpet, etc.) could be carried in the elevator.

After plaintiff was injured she settled her claim under the Texas Workmen's Compensation Act with her employer's insurance carrier. Afterward she and such carrier brought suit against the defendant in tort, alleging that her injuries proximately resulted from the negligence of defendant's employees. A defective part in the operating mechanism of the elevator called an "elevator relay" was shown to have been in existence on and prior to date of January 31, 1962—on which date defendant's employees serviced the same and discovered the defect, but failed to correct it.

On trial before a jury findings were made in answer to special issues submitted, upon which a judgment for plaintiff and the Workmen's Compensation insurer was rendered against the defendant.

Affirmed.

The jury found from a preponderance of the evidence that the failure of the employees of the defendant to adjust the elevator relay and its contact prior to the time of plaintiff's injury was negligence, and a proximate cause of the injuries she sustained. Damages flowing therefrom were found, but of this no complaint is made on the appeal. A finding was also made that

the injuries sustained by the plaintiff were not the result of an unavoidable accident. No complaint is made thereof.

From our examination of the statement of facts we find ample evidence supporting the jury findings of negligence and proximate cause, and such findings were not contrary to the overwhelming weight and preponderance of the evidence. Under the court's definition of the term "proximate cause" the element of foreseeability was fully included, and in arriving at the conclusion that there was ample evidence to support such jury findings, etc., we have at all times borne in mind the requisite that the event or injury sustained by the plaintiff, or some similar event or injury, was required to be reasonably foreseeable by persons in the position of the employees of the defendant in the light of the circumstances attendant when they serviced the elevator on January 31st, 1962. We are of the opinion, and hold that "foreseeability" in this case was a question of fact and not of law.

Two points of error presented by the defendant contend that there was no evidence that it breached any legal duty owing to the plaintiff in connection with the circumstances attendant to her injuries, and that under the undisputed evidence the defendant did not owe to plaintiff the duty to adjust the defective elevator relay and contact on the occasion when it serviced the apparatus. The theory under which these contentions are made is that any duty otherwise existent and obligatory upon defendant and its employees to correct the said condition ceased to exist because the owner of the premises, Meacham's, demanded that defendant's employees release the elevator for use. When this occurred one of the defendant's employees informed Meacham's official (who requested the release of the elevator) that he was "tying their hands", and that there were problems that needed to be taken care of in connection with the servicing of the elevator which would be foreclosed if it was released for use. Nevertheless the elevator was released to Mea-

cham's for its use. No employee of the defendant attempted to reobtain its control for completion of servicing activity between that time and the afternoon of the day following, when the accident occurred.

In this connection the evidence showed that the day before that on which the servicing operations were conducted an employee of Meacham's had notified the defendant that the elevator in question was "creeping", i. e., was going on past the point where normal operation of the elevator by one using it and manually turning the handle which controlled it would expect it to stop. This made it difficult to cause the elevator to stop at a point where the floor of the elevator would be even with the floor at which one desired to cause it to stop. Within ten (10) minutes of the time the defendant's employees arrived at Meacham's to service elevator the cause thereof was discovered. It was recognized as a matter which should be corrected. The carbon of a carbon-to-copper contact surface on what is termed the "H relay" had deteriorated so that there was not as good a contact as would be requisite to proper functioning, therefore resulting in what might be called "weak brakes" on the elevator. The "weak brakes" allowed the elevator to slide on past the point where "good brakes" would have brought it to a stop.

Defendant's employees had the equipment at hand to repair the "H relay", and the evidence showed that it could have been repaired within ten (10) minutes of the time it was discovered. However, the employees left same unrepaired and proceeded to do maintenance work of a character designed to prolong life of the machinery in general, such as cleaning, oiling, etc., leaving the repair on the "H relay" undone. They did intend to repair it, but not until they were finished with the other maintenance work. Therefore it had not been done when Meacham's official sought and obtained the release of the elevator some thirty (30) to forty (40) minutes after servicing operations commenced. Obviously the defendant's employees considered that no harm

would likely come from leaving the repair of the "H relay" until a later time, and that if Meacham's wanted to continue to use the elevator while it was "creeping" it would be an inconvenience to Meacham's and not to defendant. Their state of mind was no doubt somewhat similar to one who puts off having automobile brakes tightened or re-lined a little while longer than the day on which the poor brakes thereon result in a collision.

At no time did the defendant or its em-ployees consider that yielding to the de-mands of Meacham's and releasing the ele-vator to it for use amounted to a breach of the elevator service contract on the part of Meacham's. Nothing was ever said about such. Almost immediately after plaintiff's accident occurred the defendant reappeared on the scene, assumed dominion over the elevator and excluded Meacham's until the defective condition had been corrected. Thereafter Meacham's and the defendant proceeded to perform under the maintenance contract in the same manner as before.

Furthermore neither Meacham's nor any of its employees were ever informed of the nature of the defect discovered by the de-fendant. Neither was any warning trans-mitted. Certain it is that Meacham's re-ceived the elevator, restored to service, as one which was in normal safe condition, albeit somewhat inconvenient in that it was still "creeping".

The principles of law applicable in such a case are to be found in Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517 (1922). Therein it was held that a defendant taking over the control and repair of the elevators in a building became charged with the com-mon law duty to one rightfully using them to exercise ordinary care to maintain them in a condition of reasonable safety for use; and this irrespective of any contract be-tween the defendant and the owner of the building. The court said: "The general principle underlying our decision is laid down in volume 1, Street's Foundations of Legal Liability, p. 92, as follows: 'In every situation where a man undertakes to act or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the per-son or property of others may not be injured by any force which he sets in operation or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situa-tion, he is held liable for any damage that results to another just as if he had bound himself by an obligatory promise to exer-cise the required degree of care.' "

This general principle (quoted from other authority by the Supreme Court) effectively negates the validity of the defendant's rath-er ingenious argument, unsupported by any cited authority. The argument warrants our quoting it: "By contrast in the instant case, it is undisputed that defendant's con-trol of the elevator, if it ever existed under the contract with Meacham's, was taken from defendant by the owner before defend-ant's employees had completed the service and repair of the elevator, and over their protest that they had not finished their work. It is, therefore, undisputed in this record that, despite its contractual obligations, de-fendant in fact had neither the right to con-trol nor actual control of the elevator in the face of the owner's demand for possession and control. It can hardly be seriously con-tended that defendant's employees should have insisted, or had any right to insist, up-on retaining control of the elevator. The maintenance called for by the contract was for the benefit of Meacham's. If Mea-cham's did not want the maintenance, de-fendant was hardly in position to insist upon rendering it anyway. In other words, the fact that defendant had agreed to maintain the operating machinery did not give de-fendant the right to do so, or the right of control, when confronted with the owner's insistence upon using the equipment."

We are confident that the proposition ad-vanced, in so far as plaintiff's case is con-cerned, could avail defendant nothing. Mea-cham's is not a party to the suit. We there-fore must disregard a discussion of the law

which might come to mind relative to contentions which might be appropriate were there a dispute between it and the defendant.

The trial court submitted Special Issue No. 4, which read: "Do you find from a preponderance of the evidence that the act of Meacham's employees in allowing personnel to be transported in the elevator in question after the morning of January 31, 1962, without first permitting the completion of the servicing of the elevator by Hunter-Hayes Company was the sole proximate cause of the injuries sustained by the plaintiff on the occasion in question?" In answer thereto the jury found: "It was not the sole proximate cause."

The defendant did not object to the issue so submitted but it did file the following specially requested special issue, submission of which was refused by the court: "Do you find from a preponderance of the evidence that the conduct of the plaintiff's employer, Meacham's, in allowing the service elevator to be used for transporting personnel before its controls had been serviced and with the escape hatch cover not bolted or fastened down was the sole proximate cause of the plaintiff's injuries on the occasion in question?"

The trial court did not err in refusing to submit the defendant's specially requested issue. Texas Rule of Civil Procedure 279 provides in part: "Where the court has fairly submitted the controlling issues raised by such pleading and the evidence, the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue." Former Chief Justice James P. Alexander dealt with the question here posed in a Lecture before the Judicial Section of the State Bar of Texas, July 3, 1941. The statements he made relative thereto are to be found in the "Commentaries" under Vernon's Annotated Rules of Texas Civil Procedure. It appears therefrom that the controlling issue on "sole proximate cause" as a defense available to defendant in the instant case was

Meacham's allowing the use of the elevator when it had not permitted the defendant to complete its servicing operations. Indeed, the jarring loose of the hatch, which fell onto plaintiff's head, was an effect rather than a cause; and its unbolted condition before the failure of the elevator mechanism merely furnished the pre-existent static condition by which the particular injury sustained by plaintiff was made possible as the result of the elevator mechanism failure—just as the "bumper" against which the rising elevator struck furnished the condition of vibration which made possible the injury. Furthermore, the specially requested issue would have been subject to objection by the plaintiff had it been allowed by the court. The point of error is overruled.

Judgment is affirmed.